462

33 C.C.P.A. (Patents)

**Application of KNOWLES et al.**
**Patent Appeal No. 5051.**

Court of Customs and Patent Appeals.
Jan. 7, 1946.

Rehearing Denied Feb. 28, 1946.

O. H. Eschholz, of East Pittsburgh, Pa. (F. W. Lyle, of East Pittsburgh, Pa., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

The Primary Examiner of the United States Patent Office finally rejected claims 8, 9, and 11 to 18, inclusive, of appellants' application for patent on an electric discharge apparatus. The applicants appealed to the Board of Appeals. It affirmed the action of the examiner, and from the decision of the Board appellants here appeal.

In this Court, in their brief and oral argument, appellants state it is unnecessary for us to give any consideration to any of the claims except claims numbered 8 and 9, and we will treat their action in this respect as a motion to dismiss the appeal as to claims 11 to 18, inclusive, which motion will be granted.

This leaves for consideration only claims 8 and 9.

Claim 8, being illustrative of the herein involved subject matter, follows:

"8. A system, comprising a power condenser, controllable means for intermittently charging said power condenser, an inductive reactance, controllable means for intermittently discharging said power condenser through said inductive reactness, and by-pass means of an unidirectional character for preventing an inverse charging of said power condenser by the energy released by said inductive reactance during the collapse of the magnetic field of said inductive reactance, said energy having been built up and stored in the magnetic field of said inductive reactance by said power condenser discharge."

The structure of appellants' apparatus is quite involved but the issue at bar is very simple.

Appellants state the appealed claims are limited to an ancillary feature of the apparatus shown only in applicants' Fig. 2,

and accordingly the remaining figures in the application need not be considered. The sole issue in the case, when stripped of all unnecessary matter, is whether or not said Fig. 2 will support claims 8 and 9, and this depends solely upon whether the figure shows "an inductive reactance" or "inductive reactance" within the meaning of the claims, in the circuit through which the condenser is discharged.

Claims 8 and 9 are based on, and differ from, claim 24 of the patent to Rava, 2,-235,385, of record, with which appellants seek an interference, only in immaterial respects.

In the Rava patent, in which appears said claim 24, the discharging circuit includes coil elements which are described as "adjustable inductances" and "lumped inductances." It is stated in the Patent Office Solicitor's brief, and not denied, that:

"Inductive reactance is merely the product obtained by multiplying the inductance by 2 times the frequency. It follows that anything which has inductance will also have inductive reactance and the two terms may be treated as synonymous, so far as the purposes of this case are concerned."

Appellants, in support of their contention that said Fig. 2 of their application supports the two said limitations of the involved claims, rely upon the fact that there is inductive reactance inherently present in the ordinary wires and leads of any alternating current circuit and that this natural, always-present inductive reactance satisfies the involved critical limitations.

It is our view, as it was that of the tribunals below, that the two claims involved, in the respects with which we are now concerned, are to be treated alike since no different meaning can here be ascribed to the terms "inductive reactance" and "an inductive reactance."

Appellants and the Solicitor for the Patent Office have cited many cases claiming support therein for their respective contentions upon the particular phase of the case which we are now considering. It is well settled in law that when a situation like that at bar arises, where one seeks to acquire claims for interference purposes and there is any doubt as to the meaning or proper application of the term forming the critical limitation of the claims, resort should be made to the application in which the limitations arose in order to determine their meaning. Many cases could be cited, but it is sufficient to name Neumair v. Malocsay, 77 F.2d 622, 22 C.C.P.A., Patents, 1349, and cases therein cited.

It is also equally well established that mere equivalency of function is insufficient to justify the making of a claim which includes definite elements not shown by the application. Potts v. Kimball et al., 134 F.2d 327, 30 C.C.P.A., Patents, 847, and cases therein cited.

In Fig. 3 of the Rava patent, upon which his abovementioned claim 24 is based, he shows in the discharging circuit definite coil elements. These coil elements are placed in the circuit to provide a definite and controllable amount of inductance, while in appellants' application if the wires themselves afford an inductance (and it is not denied that they possess some inductive reactance) it is only as a characteristic of all such apparatus and is not a positive element and was not described or claimed in appellants' original application as having served the same purpose as is shown in the application of Rava

Appellants, in their brief, complain with respect to the attitude of the Board towards certain affidavits filed by appellants which appellants urge conclusively show that in the wires of appellants' apparatus there is inherent inductive reactance. In this Court this fact is not denied and is affirmatively admitted by the Solicitor for the Patent Office, which makes unnecessary any consideration by us of the subject matter of said affidavits.

To accept appellants' contention here is to in effect read out of Rava's claim as meaningless and redundant the term, "an inductive reactance." This we are not privileged to do, since definite limitations may not be ignored.

The Solicitor for the Patent Office, in his brief, affords an example quite similar to that involved in appellants' contention as follows:

"For example, all objects have weight, but if reference is made to a 'weight' it would ordinarily be understood as meaning an object having a known weight and used because of its weight. Certainly a cork or a piece of paper would not be considered as a weight, although they must weigh something. Similarly, every electric conductor has some resistance but the word

'resistance' when used to refer to an element, is understood to mean one having a known resistance and used for the purpose of providing resistance. The ordinary conductors in which resistance is kept as low as possible, would not be thought of as resistance elements. It is thought that the appealed claims, if fairly construed, are limited to the employment of a definite amount of inductive reactance or, at least, of more of such reactance than would inherently be present in a condenser discharge circuit. If they are not so limited, then the expression 'an inductive reactance' is mere surplusage."

On that phase of the issue relating to the necessity of appellants' application to disclose the presence of an actual inductive element rather than an inductive characteristic inherent in all such electric circuits, the following authorities would seem to be in point: Thompson v. Pettis, 44 F.2d 420, 18 C.C.P.A., Patents, 755; Rohlfing v. Murphy, 44 App.D.C. 252, 1916 C.D. 123; and Peterson v. Schatzel, 129 F.2d 556, 29 C.C.P.A., Patents, 1124.

It is our view that appellants' application does not disclose the said critical elements of the claims involved and that the Board of Appeals properly affirmed the action of the examiner in the rejection of appellants' appealed claims 8 and 9 on the ground that they were not supported by appellants' disclosure, and its decision so doing is affirmed. The appeal as to claims 11 to 18, inclusive, is dismissed.

Affirmed.